

January 8, 2007

Emily Waters
c/o Law Office of Ian Mattoch
Suite 1835, Pacific Guardian Center
737 Bishop Street
Honolulu, Hawaii 96813

**Re: Powell, Laughlin, et al. vs. City and County of Honolulu**

Dear Ms. Waters:

As you requested, subsequent to my initial report I have reviewed the report of Major Maceo concerning the drownings of Eric Powell and James Laughlin. The purpose of this letter is to briefly summarize my rebuttal to Major Maceo's report; I anticipate that at the time of trial my testimony would include the opinions expressed both in my initial report as well as those expressed in this rebuttal letter.

For the sake of expediency the format of this rebuttal letter will note the "Issue" and/or "Opinion" section from Major Maceo's report and the content therein to which I disagree. List below each such item is my rebuttal response.

**Opinion on Issue Two:** "…Witches Brew was not considered, and should not be considered, a guarded area."
    a. This is inconsistent with the testimony of the various City and County Water Safety Officers (WSO) that were deposed in this matter.
    b. This is inconsistent with Major Maceo's own interview of WSO Neves.
    c. As noted in Major Maceo's Issue Four discussions, WSO Moses recognized Mr. Laughlin as a swimmer in distress when he attempted to climb out at Witches Brew. Given the extraordinary hazards associated with Hanauma Bay (i.e. as discussed in my initial report), along with the extremely high swimmer/snorkeler to lifeguard ratio, one must ask why was WSO Moses wasting valuable scan time looking so far removed from the area he should have been monitoring.
    d. This is inconsistent with the closing of the land access to Witches Brew on the date of the incident.
    e. This is contrary to the basic principles of safety and risk management. Witches Brew was a known hazard on the date of the incident and thus warning signs were posted on the land access approach. However it was clearly foreseeable that swimmers/snorkelers such as Mr. Powell and Mr. Laughlin would not see such signs and would approach the area by water.

   f. More importantly, as discussed in numerous places in my initial report there were several WSOs that testified that they monitor the water between the channel and Witches Brew, particularly if Witches Brew is closed such as it was on the date of Mr. Powell's and Mr. Laughlin's drowning.

**Opinion on Issue Three:** "…Hanauma Bay was staffed as adequately as it **could** have been" (Emphasis Added).
   a. There were only 4 WSOs on duty on the date of the Mr. Powell and Mr. Laughlin drowning.
   b. Without question there not only **could** have been additional WSOs, there **should** have been additional WSOs given the various known hazards as discussed in my initial report, as well as the numerous prior drownings at Hanauma Bay.

**Opinion on Issue Three:** "…a decline in attendance at Hanauma Bay prior to the Powell/Laughlin incident."
   a. This is contrary to the data in Major Maceo's own report (i.e. see Appendix 20).
   b. Notwithstanding, it would require a significant/large decline in attendance before any such decline would be relevant, particularly given the excessively high drowning rate at Hanauma Bay in the 6 months prior to Mr. Powell's and Mr. Laughlin's drowning.

**Issue Four:** "Mr. Laughlin did not show any signs of distress until he tried to climb the rock ledge."
   a. This completely misses the point. Witches Brew was closed because of the extremely hazardous conditions that existed that day.
   b. As noted by WSO Goodwin when he was interviewed by Major Maceo, the water around Witches Brew was rough, like a washing machine.
   c. Given these facts, Mr. Powell and Mr. Laughlin were approaching extreme danger the entire time they swam towards Witches Brew and were in extreme danger the entire time they were swimming/snorkeling in the general area of Witches Brew. The City and County WSOs most certainly should have responded to the impending catastrophe **before** Mr. Laughlin attempted to climb out of harms way. Again as noted above and as discussed in my initial report, several WSOs testified that not only do they monitor the water between the channel and Witches Brew, they warn and/or intercept (i.e. via surfboard) those that start to stray towards the Witches Brew area.

**Opinion on Issue Four:** "Hazards were identified and precautions taken…"
   a. As discussed at length in my initial report this is inconsistent with the facts of this case and contrary to basic safety and risk management principles.
   b. Worse yet, the hazards have still not been fully identified and proper precautions still have not been taken as evidenced by the opinions expressed, after the fact, by Major Maceo.

**Opinion on Issue Four:** "WSO Moses was extremely attentive in his visual surveillance."
   a. As discussed previously, Major Maceo claims that Witches Brew was **not** an area that was to be monitored by WSOs.

2

  b. If one accepts Major Maceo's assertion that Witches Brew was not an area that was to be monitored, given its remote location relative to the main area of Hanauma Bay that was supposed to be monitored, that would mean that WSO Moses was wasting valuable surveillance time (i.e. not being attentive to assignment) by watching an area to which he was not assigned to monitor.

**Opinion on Issue Four:** "…I would not have thought them a risk. Neither gentleman warranted attention while swimming the distance…"
  a. This opinion is very telling of why Major Maceo is not critical of the City and County.
  b. In his opinion, two men of unknown experience/swimming ability, in a bay where the overwhelming majority of swimmers are known not to be local, are hundreds of yards from the "safe" swimming area, are swimming directly towards an area that is closed because of hazardous water conditions, and yet Major Maceo does not believe they are at risk because "they were not showing any signs of distress".
  c. To use an analogy, if swimmers were drifting downriver and unbeknownst to them there was a dangerous waterfall just downstream, Major Maceo would not consider them at risk, at least not until they were attempting to climb up to safety right on verge of going over the falls.

**Opinion on Issue Four:** "…lifeguards responded to this particular incident in the most aggressive manner possible. You cannot look at the facts of this unfortunate incident, from the initial spotting of Mr. Laughlin…"
  a. With respect to the first portion of the statement, a simple (i.e. not even aggressive) and proper response from the WSOs would have been to have intercepted Mr. Powell and Mr. Laughlin well before they entered the dangerous waters of Witches Brew. It should be pointed out that when WSO Neves was interviewed by Major Maceo he opined that Mr. Powell and Mr. Laughlin swam across the entire width of Hanauma Bay from the Toilet Bowl area on the left side of the bay (i.e. as viewed when looking towards the ocean) in order to get to the Witches Brew area.
  b. With respect to the second portion of the statement, Major Maceo is absolutely right, yet that is what he has done in his analysis. The point to be made is quite simple: Major Maceo tries to argue that Mr. Powell and Mr. Laughlin were not in distress, and hence needed no attention/response from the WSOs until Mr. Laughlin tried to climb out of the deadly waters of Witches Brew. It is not surprising then that Major Maceo concludes the WSOs did the best they could. But that completely misses the point of pro-active safety.
  c. Consider the following analogy. What if "officers" of a school saw a pupil bring a gun on campus and yet did nothing, but once the pupil starting shooting, the officers quickly and aggressively responded. At issue is not the officers' response once the most acute consequences of the hazard began to unfold, but rather was there a breakdown in the system that failed to protect the public (i.e. the pupils or in this case the swimmers/snorkelers at Hanauma Bay). Major Maceo's analysis is woefully incomplete because it does not address the break down in the system that needlessly allowed Mr. Powell and Mr. Laughlin to be exposed to a known (i.e. to the City and County) but hidden (i.e. to Mr. Powell and Mr. Laughlin) hazard; rather, Major Maceo's analysis does not start until after Mr. Laughlin was

3

spotted attempting to rescue himself (i.e. climb up the rocks to get out of the deadly waters of Witches Brew).

**Opinion on Issue Five:** "You can post a million signs in an area the size of Hanauma Bay beach, and people will continue to walk right by them without even noticing they are there, much less reading them."
   a. Yet Major Maceo criticizes the Powell/Laughlin party (i.e. for example see the Issue Five Section of his report) for ignoring one or more warning signs that only stated "Warning Strong Current", without even specifying where such currents might be.
   b. Major Maceo is simply reiterating part of the underlying basis for the Fundamental Principle of Safety that was discussed in my initial report. Warnings (i.e. Persuasion Control) are only to be used as a last resort because they are known to be so ineffective. Yet, the only safety method that was in place to have protected the swimmers/snorkelers from the deadly waters of Witches Brew was just a few generic strong current signs.
   c. Again, Major Maceo's opinion is that it is perfectly fine to allow unknown members of the guarded public to swim into Witches Brew, even when it is closed due to hazardous conditions, and do nothing to stop them even though he knows that a "million signs" will not likely have any effect.

**Opinion on Issue Five:** "All preventive warnings and water safety recommendations available at Hanauma Bay on July 19, 2002 were visible to Mr. Powell and Mr. Laughlin as well as many other beach patrons."
   a. But these warnings were grossly defective; they were not consistent with requirements as set forth by the American National Standards Institute (i.e. ANSI Z 535.1 through Z 535.5).
   b. More importantly, by his own admission a million warning signs would not have made any difference; so what is the relevance of saying "all preventive and water safety recommendations available….were visible to Mr. Powell and Mr. Laughlin". Certainly, it can't be to criticize Mr. Powell and Mr. Laughlin, as it is known normal human behavior, even according to Major Maceo, that beach goers are not likely to perceive such information. But what it does mean is that since such signs were the only chance Mr. Powell and Mr. Laughlin had of being alerted to the hidden hazards of Witches Brew, the City and County did nothing to protect them until it was too late (i.e. Mr. Laughlin attempted a self-rescue).

**Opinion on Issue Five:** "The conditions present at Hanauma Bay that day….screamed "danger"….Witches Brew is 1000 yards from the nearest lifeguard stand…hazards of Witches Brew were in full view for all prudent beach patrons to see…"
   a. If the conditions "screamed danger" why is that Major Maceo opines earlier that if he had seen Mr. Powell and Mr. Laughlin swimming towards Witches Brew he would not have seen them as being at risk?
   b. 1000 yards is $3/5^{ths}$ of a mile; it is not only absurd, it is contrary to basic safety and human factors principles to suggest that prudent beach goes would perceive the water conditions so far away, much less to appreciate the hazard from such a distance.

4

**Opinion on Issue Six:** "The lifeguards were practicing proper scanning techniques as per recommendations made by the USLA."
  a. How can this be if WSO observed Mr. Laughlin from over 1000 yards away in an area Major Maceo claims was **not** to be guarded.
  b. How can this be if both the Toilet Bowl and Witches Brew were closed due to hazardous water conditions yet Mr. Powell and Mr. Laughlin supposedly swam over a 1000 yards to Toilet Bowl, then swam across the entire width of the bay to Witches Brew, yet neither men were noticed until Mr. Laughlin attempted his self-rescue.

**Summation:** "…an inference appears to the effect that OSLSD…had no protocol in place….to me, it is apparent that protocol existed….and was followed."
  a. Again Major Maceo's analysis is incomplete. Even if one assumes that there was a protocol and it was followed that still is not adequate.
  b. The protocol must be adequate to protect the public from known and foreseeable hazards. Even by Major Maceo's own analysis it is clear this was not the case.

**Summation:** "Questions concerning scanning techniques…repeatedly asked of all those deposed; and repeatedly answered the same."
  a. Not true; there are repeated examples of the WSOs contradicting each other.
  b. For example, on the critical issue of scanning, WSO Bregman testified that each tower was assigned a section of the bay to scan while WSO Moses testified they are not assigned specific areas and he scans the entire bay.

**Summation:** "The mere presence of lifeguards is in itself a risk management plan…..warning signs is another…..scheduling…also a true form of risk management."
  a. Having a risk management plan is not enough; the plan must be adequate.
  b. It is interesting to note the Major Maceo claims the presence of warning signs show that the City and County had a risk management program, even though he opines that a million signs would go unnoticed.

**Summation:** "There is a difference between closing a ledge, and closing an area of the ocean."
  a. Precisely; the City and County made a reasonable effort to close access to Witches Brew by the ledge (i.e. a barricade and warning signs that impeded access to the ledge by land).
  b. But the City and County made no effort to close access to Witches Brew via water. That is, despite some WSOs testimony that they had verbally warned via megaphone and/or intercepted via surfboard in the past, no one did so to save Mr. Powell and Mr. Laughlin.
  c. Worse yet, even after the fact, Major Maceo testified that if he had seen Mr. Powell and Mr. Laughlin swimming towards Witches Brew, he would not have perceived them to be at risk.

**Summation:** "…the conscious decision of Mr. Powell and Mr. Laughlin to enter rough and unknown waters…"

   a. There is absolutely no basis for such an opinion.
   b. This is not to say that Mr. Powell and Mr. Laughlin were forced or swept into Witches Brew; but there is no basis to opine that Mr. Powell and Mr. Laughlin knew they were entering rough, unknown, or dangerous waters. They were snorkeling in a park, with many other swimmers/snorkelers and multiple lifeguards. There is no reason to believe that they somehow knew or should have known of the conditions at Witches Brew, particularly since they were snorkeling (i.e. face down in the water much/most of the time).

**Interview with WSO Neves:** "…normal to see people going through the cut but not on a day like the one in question….not many people in the slot July 19, 2002…had been out on rescue board blocking the slot and warning people by turning them around….when asked if it was normal for people to venture that far out (as far as the areas where Powell and Laughlin were found), Neves replied that it wasn't."
   a. Such statements beg the question of why when both the Toilet Bowl and Witches Brew were closed, Mr. Powell and Mr. Laughlin swam such long distances but no actions were taken until Mr. Laughlin attempted a self-rescue.
   b. They are also contrary to Major Maceo's opinion that if he had seen Mr. Powell and Mr. Laughlin swimming towards Witches Brew he would not have perceived them at risk.

**Interview with WSO Neves:** "Neves state that Hanauma Bay has "…proud drowners, no signs of a struggle"."
   a. Yet even armed with this information from his own personal interview of one of Hanauma Bay's experienced WSOs, Major Maceo still opines that Mr. Powell and Mr. Laughlin, who were a 1000 yards out headed towards Witches Brew were not at risk since they were not showing any signs of distress.


Please let me know if you have any questions or if I can be of any further assistance. I look forward to continuing to work with you on this matter.


Sincerely,

*[signature]*

Richard Gill, Ph.D., CHFP, CXLT
President and Chief Scientist

6