IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

THE ESTATE OF ERIK A. POWELL, )      CIVIL NO. 04-00428 LEK
THROUGH PERSONAL               )
REPRESENTATIVE MARY K.         )
POWELL, ET AL.,                )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
CITY & COUNTY OF HONOLULU,     )
                               )
          Defendant.           )
_____)

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant City and County of

Honolulu's ("Defendant") Motion for Partial Summary Judgment

("Motion"), filed December 29, 2006.  Plaintiffs the Estate of

Erik A. Powell, through Personal Representative Mary K. Powell;

the Estate of James D. Laughlin, through Personal Representative

Raginae C. Laughlin; Mary K. Powell, individually; Raginae C.

Laughlin, individually; and Chloe Laughlin, a minor, through her

next friend, Raginae C. Laughlin (collectively "Plaintiffs")

filed their memorandum in opposition on January 18, 2007.

Defendant filed its reply on January 26, 2007.  This matter came

on for hearing on February 8, 2007.  Appearing on behalf of

Defendant was Derek T. Mayeshiro, Esq., and appearing on behalf

of Plaintiffs was Emily Kawashima Waters, Esq.  Plaintiffs

Mary Powell and Raginae Laughlin were also present.  On

February 15, 2007, Defendant filed supplemental memorandum in support of the Motion and Plaintiffs filed a supplemental memorandum in opposition to the Motion.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendant's Motion is HEREBY GRANTED IN PART and DENIED IN PART for the reasons set forth below.

## BACKGROUND

The instant case arose from the July 19, 2002 drowning deaths of Erik Powell and James Laughlin after an incident at the Hanauma Bay Nature Preserve ("Hanauma Bay"), in the area of the bay known as the "Witches Brew".  That day, Mary Powell ("Mrs. Powell"), her husband Erik Powell, and her brother James Laughlin arrived at Hanauma Bay at around 8:30 a.m.  [Exh. 5 to Pltfs.' Separate and Concise Stat. of Facts in Supp. of Mem. in Opp. ("Pltfs.' Facts").]  Mrs. Powell and Laughlin asked an attendant at the visitor center how to get past the coral reef to snorkel in the area beyond the reef.  [Exh. 7 to Pltfs.' Facts at 56-57.]  According to Plaintiffs, the attendant identified the "pull line" and "buoys" that marked the channel through the reef and told them to go through there to get to the open area of the bay.  [Exh. 9 to Pltfs.' Facts.]  At about 10:00 a.m., Powell and Laughlin entered the water and snorkeled in the inner area of the bay.  They then decided to explore beyond the reef.  [Exh. 6 to

Pltfs.' Facts.]

That day, the park attendance was 3,773. [Exh. 37 to Pltfs.' Facts.] The Witches Brew and the area known as the "Toilet Bowl" were both closed because of the conditions that day. [Exh. 13 to Pltfs.' Facts.] Lifeguard Daniel Neves testified that there was a lot of wind and a lot of wake in the water. Coupled with the glare, it was very hard for the lifeguards to see. [Exh. 12 to Pltfs.' Facts.]

Lifeguard Clarence Moses was stationed at one of the lifeguard towers when he saw someone, later identified as Laughlin, swimming around Witches Brew Point. Laughlin appeared to be doing fine until he tried to climb out to the side of the ledge. He fell back into the water, apparently too weak to climb out. Moses sent his partner, Neves, to assist Laughlin and called his supervisor to notify him of a possible rescue. [Exh. 14 at 29.] By the time Laughlin failed in his second attempt to pull himself onto the ledge, Neves had reached the end of the beach, but still had to run down to the ledge. Moses also ran down to assist. [Exh. 15 to Pltfs.' Facts.] As Moses ran down, the acting supervisor, Ron Bregman, drove past on his truck, heading toward the scene. Neves jumped into the water and brought Laughlin to the ledge. Moses, Neves, and Bregman pulled Laughlin out of the water and performed CPR. [Exh. 18 to Pltfs.' Facts; Exh. B to Def.'s Separate and Concise Stat. of Facts in

3

Supp. of Motion ("Def.'s Facts") at 33-34.]  Laughlin vomited during CPR and the amount of vomit made resuscitation difficult. [Exh. C to Def.'s Facts at 58-59.]  The lifeguards continued CPR until the ambulance arrived.  [Exh. B to Def.'s Facts at 37.]

After the ambulance left, the lifeguards questioned other bay patrons to determine the swimmer's identity.  After they determined that he may not have been in the water alone, they called for the mobile rescue team, which operates the jet ski.  [Id. at 38-39.]  Lifeguards Billy Goodwin and Rob Dorr were operating the jet ski that day.  They were at Sandy Beach when they got the call.  As they arrived at Hanauma Bay, Moses was going to a lookout area to get a better view of the bay.  He spotted Powell's body and Goodwin and Dorr launched the jet ski. This was about half an hour after they pulled Laughlin out of the water.  Goodwin and Dorr picked up Powell and performed CPR. [Exh. D to Def.'s Facts at 11, 22-23.]  Both Powell and Laughlin were later pronounced dead from drowning.  [Exh. 21 to Pltfs.' Facts.]

At the time of the incident, Hanauma Bay had three warning signs concerning the strong current.  According to Defendant, the signs and the placement thereof had been approved by the chairperson of the Board of Land and Natural Resources, in compliance with Act 190.  At the time of the incident, these signs had not been vandalized or removed and they were legible.

[Def.'s Facts, Decl. of Ralph S. Goto ("Goto Decl.") at ¶¶ 5-7; Exh. E to Def.'s Facts (pictures depicting the signs on the day of the incident).]

In the instant Motion, Defendant seeks summary judgment in its favor as to all claims pertaining to Powell's death. Defendant argues that, because no one saw what happened to Powell, Plaintiffs cannot demonstrate that Defendant's alleged negligence was the proximate cause of his death.

Defendant also argues that, pursuant to Act 190, the posted warning signs are presumed to be legally adequate warnings of the strong currents. Plaintiffs' water safety expert, Thomas Ebro, opined that the strong currents led Powell and Laughlin to the Witches Brew. Ebro believes that Powell inadvertently inhaled some water, which caused him to drown. Defendant argues that it complied with Act 190 and the signs are presumed to be adequate warnings of the dangerous currents in the bay. Defendant argues that it is entitled to summary judgment on Plaintiffs' claims based on inadequate warnings.

Defendant states that, under Hawai`i law, county lifeguards are only liable for gross negligence or wanton conduct. Plaintiffs have not alleged that the lifeguards were grossly negligent or acted wantonly. Paragraph 15 of the Complaint only alleges that the lifeguards acted negligently in failing to keep a proper lookout for swimmers in distress.

Defendant argues that Plaintiffs only alleged simple negligence, to which county lifeguards are immune from suit.  Defendant argues that those claims must be dismissed.

Even assuming, *arguendo*, that the Complaint sufficiently alleges gross negligence or wanton conduct, Plaintiffs have not submitted any evidence supporting the allegations.  Plaintiffs' water safety expert, Mr. Ebro, does not have any evidence to support his opinion that the lifeguards were grossly negligent because they did not see Powell and Laughlin swim toward the Witches Brew.  His opinion is not based upon any evidence that the lifeguards failed to see them because of indifference or utter forgetfulness of their duties, nor did Mr. Ebro have evidence that the lifeguards' actions were heedless or in palpable violation of their duties.  Defendant therefore urges the Court to disregard Mr. Ebro's opinion.

Defendant also asserts that the visitor center worker referenced in Count II of the Complaint, who allegedly told Powell and Laughlin's group to swim at Witches Brew, was not a City employee or agent.  Defendant states that the visitor center staff is comprised of volunteers with the University of Hawai`i and Defendant argues that it is not liable for their conduct.  Even if the person were a City employee or agent, Defendant denies that she directed the group to swim in the Witches Brew area.  She merely told them where to swim past the reef.  She did

6

not direct them to swim at any particular area beyond the reef. Another unidentified person had already told them where to swim.

Finally, Defendant argues that the Court must dismiss Plaintiffs' request for punitive damages because Hawai`i law does not allow for the recovery of punitive damages from a municipality.

Plaintiffs filed their memorandum in opposition on January 18, 2007.  Plaintiffs argue that Defendant is not entitled to summary judgment based solely on the fact that no one saw Powell drown because proximate cause can be established through circumstantial evidence.  In Plaintiffs' view, the evidence establishes that, but for the lifeguards' gross negligence, Powell would not have drowned.  In the alternative, they argue that there are genuine issues of fact that should be resolved at trial, particularly because Plaintiffs' case is based on Defendant's failure to implement adequate safety procedures. Further, Defendant should not be allowed to use the lack of adequate lifeguards as a defense because it created that condition and the condition led to Powell's drowning.

Plaintiffs note that as many as 4,000 visitors a day come to Hanauma Bay.  As of July 2002, seven people had already drowned at Hanauma Bay that year.  Despite this, Hanauma Bay only had four lifeguards, manning two lifeguard towers.  [Exhs. 1–3 to Pltfs.' Facts.]  At times there would only be two guards on duty

because of breaks.  [Exh. 24 to Pltfs.' Facts.]  Hanauma Bay increased the number of lifeguards after 2002.  [Exh. 2 to Pltfs.' Facts.]  Further, the lifeguards testified during their depositions that it was difficult to monitor swimmers in the area because they were face down for most of the time.  [Exh. 4 to Pltfs.' Facts.]  Bregman testified that eighty to ninety percent of rescues occurred in the cable channel, known as "the Slot", or in the outer reef because people who get caught in the current get sucked into the undertow.  [Exh. 22 to Pltfs.' Facts at 40-41.]

Plaintiffs argue that the lack of appropriate safety measures at Hanauma Bay on the day in question was the proximate cause of Powell and Laughlin's death.  Given the conditions on the day in question, the outer reef was closed.  Powell and Laughlin, however, were able to swim through the channel undetected and were gone for at least an hour.  Plaintiffs argue that there should have been more safety precautions to adequately monitor the closed area and to warn visitors to stay away from the area.  If such procedures had been in place, Powell and Laughlin would not have entered the area.  Plaintiffs also argue that, based on the lifeguards' deposition testimony, Hanauma Bay was grossly understaffed and, if there had been more lifeguards, Powell and Laughlin would have been spotted sooner.  [Exhs. 23 & 25 to Pltfs.' Facts.]  Further, the single emergency rescue jet

ski served Kailua Beach, Waimanalo, Makapuu, Sandy Beach, and
Hanauma Bay and had to be towed by truck between the beaches.
Neves testified that one jet ski is not sufficient to cover these
areas and that, if the jet ski had been on site, both men might
have been saved.  [Exh. 26 to Pltfs.' Facts at 109.]  Ralph Goto,
the administrator for Ocean Safety and Lifeguard Services,
testified that he had the authority to transfer lifeguards from
one beach park to another, but that he had never done so.  [Exh.
28 to Pltfs.' Facts.]  Goto also considered assigning a lifeguard
to be in the water but concluded that wasn't justified.  [Exh. 30
to Pltfs.' Facts.]  James Howe, the highest officer under Goto,
testified that, despite the number of drowning incidents at
Hanauma Bay that year, he did not ask for additional lifeguards.
[Exh. 27 to Pltfs.' Facts.]  In addition, Plaintiffs argue that
the buoys marking the cable channel were misleading to swimmers.
There was no indication that the buoys marked a dangerous area;
they appeared to invite swimmers to venture through the marked
area to the outer reef.  Mrs. Powell thought that the buoys were
a pull line, based on the information she got from the visitor
center attendant.  [Exh. 7 to Pltfs.' Facts at 57.]  Further, the
buoys are not marked with any warnings and their purpose is not
clear.  Even Bergman testified at his deposition that they served
as a warning, but "[i]t might help them when they are trying to
return to shore outside the reef.  It may help them identify

where they can swim through, rather than swim over the reef."
[Exh. 32 to Pltfs. Facts at 58.]  Plaintiffs argue that whether
these circumstances were a substantial factor in Powell's death
is a factual determination for the jury to decide.

Plaintiffs also argue that Defendant is not entitled to
summary judgment on their claim that the warnings signs were
inadequate.  Plaintiffs concede that Act 190 provides a
conclusive presumption regarding the counties' duty to warn of
dangerous conditions at beach parks, but they argue that
Defendant has not established that it met the requirements of Act
190.  Although Defendant has stated that the Chairperson of the
Board of Land and Natural Resources approved the signs prior to
the incident, Defendant has not produced any admissible evidence
to this effect and has not established that the chairperson
consulted the governor's task force.  Mr. Goto's declaration did
not establish that he personal knowledge of those facts.
Further, Plaintiffs argue that areas of Hanauma Bay known as "the
slot" or "cable channel" were not clearly identified as hazardous
areas.

Plaintiffs also argue that, under notice pleading, they
adequately pled gross negligence and wanton conduct.  Plaintiffs
point to various paragraphs in the Complaint which specifically
allege gross negligence and wanton conduct.  Plaintiffs also
argue that summary judgment is not appropriate because there are

10

genuine issues of material fact regarding whether Defendant was grossly negligent.

Plaintiffs argue that Defendant is not entitled to summary judgment as to the allegations in Count II regarding the visitor center worker.  Although Defendant has denied that the worker was a City employee or agent, Defendant has not produced any evidence establishing this fact.  In addition, Count II included other allegations of gross negligence, not just those regarding the visitor center employee.

Finally, Plaintiffs concede that punitive damages are not available in this case pursuant to Hawai`i law.

Defendant filed its reply on January 26, 2007, primarily reiterating arguments raised in the Motion.  In addition, Defendant argues that Plaintiffs can only speculate that rough ocean conditions, under staffing, and/or confusing buoys were the cause of Powell and Laughlin's deaths.  Further, Defendant asserts that Powell and Laughlin were not in fact confused by the buoys.  They chose to swim past them because they wanted to see things beyond the reef.

Defendant argues that Mr. Goto has the personal knowledge to testify to Hanauma Bay's compliance with Act 190 because he has been a member of the task force established under Act 190 since its inception.  Defendants also submitted a supplemental declaration by Mr. Goto with supporting documents to

establish Hanauma Bay's compliance with Act 190.  [Exhs. H & I to
Reply.]  Defendant argues that the Court should not consider the
purported expert reports attached to Plaintiffs' memorandum in
opposition because they do not comply with Rule 56.  Further, the
Court should not consider Richard Gill's declaration and the
associated exhibits because Plaintiffs did not establish that he
has expertise in water safety.

<u>**STANDARD**</u>

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the initial burden of establishing
that there is no genuine issue of material fact.  <u>See</u> <u>MetroPCS,</u>
<u>Inc. v. City & County of San Francisco</u>, 400 F.3d 715, 720 (9th
Cir. 2005).  There is no genuine issue of material fact if, based
on the record as a whole, a rational trier of fact could not find
for the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd.</u>
<u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "A material
fact is one that may affect the decision, so that the finding of
that fact is relevant and necessary to the proceedings."  <u>W.</u>
<u>Sunview Props., LLC v. Federman</u>, 338 F. Supp. 2d 1106, 1114 (D.
Hawai`i 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

12

242, 248 (1986)).

If the moving party meets its burden, the non-moving party must then present evidence that there is a genuine issue of material fact for trial.  In considering a motion for summary judgment, a court must resolve all disputed issues of fact in favor of the non-moving party.  See MetroPCS, 400 F.3d at 720.  Further, "[i]n ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law."  W. Sunview, 338 F. Supp. 2d at 1114 (citation omitted).

## DISCUSSION

In the instant Motion, Defendant seeks summary judgment on the following issues: 1) all claims pertaining to Powell's death; 2) all claims alleging that Hanauma Bay's hazardous conditions warning signs are inadequate; 3) all claims arising from the lifeguards' alleged negligence; 4) the claims in Count II regarding the visitor center worker; and 5) Plaintiffs' request for punitive damages.

## I.   Liability for Powell's Death

In diversity cases, federal courts apply state substantive law.  See Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).  Under Hawai`i law,

> an actor's negligent conduct is a legal cause of
> harm to another if (a) his or her conduct is a
> substantial factor in bringing about the harm, and
> (b) there is no rule of law relieving the actor

13

> from liability because of the manner in which his
> or her negligence has resulted in the harm.  The
> first prong of the test for the presence of legal
> causation contemplates a factual determination
> that the negligence of the defendant was more
> likely than not a substantial factor in bringing
> about the result complained of.  In this regard, a
> defendant's negligence need not have been the
> whole cause or the only factor in bringing about
> the harm.  It [i]s enough that his or her
> negligence was a substantial factor in causing
> [the] plaintiff's injuries.  The second prong
> contemplates . . . whether there are policy
> concerns or rules of law that would prevent
> imposition of liability on the negligent party
> although his [or her] negligence was clearly a
> cause of the resultant injury.

Doe Parents No. 1 v. State, Dep't of Educ., 100 Hawai`i 34, 85,

58 P.3d 545, 596 (2002) (citations and quotation marks omitted)

(alterations in original).  Defendant argues that it is entitled

to summary judgment as to all claims arising from Powell's death

because there is no evidence that Defendant's actions were a

substantial factor in bringing about his death.

No one saw what happened to Powell and Laughlin between

the time that they swam past the coral reef until Moses saw

Laughlin swimming near Witches Brew Point.  Further, no one saw

the events that led up to Powell's death.  Defendants argue that

any number of factors, which are unrelated to the dangerous

conditions of the day and Defendant's alleged failure to warn

Powell of those conditions, could have caused his death.  For

example, Powell could have had severe cramps in the water because

he ate a big meal shortly before swimming.  Defendant therefore

14

argues that, even construing the evidence in the light most favorable to Plaintiffs, they cannot establish a prima facie case because they cannot prove the element of causation.

As noted above, the causation issue "a <u>factual determination</u> that the negligence of the defendant was more likely than not a substantial factor in bringing about" Powell's death.  <u>See</u> <u>Doe Parents No. 1</u>, 100 Hawai`i at 85, 58 P.3d at 596 (emphasis added).  It is undisputed that Powell: went snorkeling at Hanauma Bay; entered an area that was supposed to be closed due to dangerous conditions that day; and eventually died from drowning.  It is true that no one knows the precise events which lead to his drowning, but the fact remains that Powell died while engaged in an activity that Defendant invites the public to engage in at Hanauma Bay and his death was related to this activity.

Plaintiffs have argued that Defendant's negligence in the following areas contributed to the proximate cause of Powell's death: the rough conditions on that day and Defendant's failure to adequately warn swimmers or to keep them away from dangerous areas; an insufficient number of lifeguards to monitor the number of people at Hanauma Bay; and the fact that the buoys sent conflicting signals to swimmers and led them to believe that they could swim through those areas.  Plaintiffs have offered some evidence in support of each of these factors.  Even

15

assuming, *arguendo*, that another factor unrelated to the City's conduct contributed to Powell's death, these allegedly negligent actions and omissions could have also been substantial factors. This Court finds that there are genuine issues of material fact regarding the cause of Powell's death and that the jury must make the factual determinations relevant to causation.  This Court therefore DENIES Defendant's request for summary judgment as to Plaintiffs' claims arising from Powell's death based on their alleged failure to establish causation.

## II.  **Adequacy of Defendant's Warnings**

Defendant argues that it is entitled to summary judgment on all of Plaintiffs' claims based on Defendant's alleged failure to warn Powell and Laughlin of the hazardous conditions in Hanauma Bay.  Defendant argues that, pursuant to Act 190, the signs in place at Hanauma Bay on the day in question are conclusively presumed to be legally adequate warnings.

Act 190 took effect on July 1, 1996, <u>see</u> 1996 Haw. Sess. L. Act 190, § 7 at 437, and was in effect at the time of the incident at issue in this case.  <u>See</u> 1999 Haw. Sess. L. Act 101, § 2 at 370 (extending the initial repeal date of June 30, 1999 to June 30, 2002); 2002 Haw. Sess. L. Act 170, § 2 at 610 (re-extending the repeal date to June 30, 2007).  Act 190 states, in pertinent part:

> **§663- Conclusive presumptions relating to**
> **duty of public entities to warn of dangers at**

16

**public beach parks.** (a) The State or county operating a public beach park shall have a duty to warn the public specifically of dangerous shorebreak or strong current in the ocean adjacent to a public beach park if these conditions are extremely dangerous, typical for a specific beach, and if they pose a risk of serious injury or death.

(b) <u>A sign or signs warning of dangerous shorebreak or strong current shall be conclusively presumed to be legally adequate to warn of these dangerous conditions</u>, if the State or county posts a sign or signs warning of the dangerous shorebreak or strong current and the design and placement of the warning sign or signs has been approved by the chairperson of the board of land and natural resources.  The chairperson shall consult the governor's task force on beach and water safety prior to approving the design and placement of the warning sign or signs.

. . . .

(f) Neither the State nor any county shall have a duty to warn of dangerous natural conditions in the ocean other than as provided in this section.

(g) In the event that a warning sign, device, or system posted or established in accordance with this section is vandalized, otherwise removed, or made illegible, the conclusive presumption provided by this section shall continue for a period of five days from the date that the vandalism, removal, or illegibility is discovered by the State or county. . . .

(h) The chairperson shall consider the needs of the public to be warned of potentially dangerous conditions in the ocean adjacent to a public beach park prior to issuing an approval for the design and placement of a warning sign or a comprehensive plan.  The chairperson may require warning devices or systems in addition to the signing before approving the design and placement of a warning sign or a comprehensive plan.  The approval of the design and placement of a warning sign, device, system or comprehensive plan provided in this section shall be a discretionary decision under chapter 662.

1996 Haw. Sess. L. Act 190, § 2 at 435–36 (emphasis added).[1]
Courts must strictly construe Act 190's requirements because Act
190 places specific limitations on the State's and the counties'
duty to warn, in derogation of common law tort principles.  See
Lansdell v. County of Kauai, 110 Hawai`i 189, 201, 130 P.3d 1054,
1066 (2006).

        In support of the Motion, Defendant submitted the
declaration of Ralph S. Goto, who has been the Administrator of
the Ocean Safety and Lifeguard Services Division, Honolulu
Emergency Services Department, City and County of Honolulu, since
1981.  [Goto Decl. at ¶ 1.]  Mr. Goto states that, on the day of
the incident, there were three signs at Hanauma Bay which warned
of the strong current and these signs were neither vandalized,
removed, nor illegible.  According to Mr. Goto, as of the date of
the incident, the chairperson of the Board of Land and Natural
Resources ("BLNR") had approved the design and placement of the
signs.  [Id. at ¶¶ 5–7.]  Defendant also included photographs of
the signs as they existed on the date of the incident.[2]  [Id. at
¶ 8; Exh. E to Def.'s Facts.]

        In their memorandum in opposition to the Motion,
Plaintiffs argued that there is a genuine issue of material fact

---

        [1] Act 190 was codified as Haw. Rev. Stat. § 663–10.5.

        [2] The Goto Declaration actually refers to July 9, 2002, but
this appears to be a typographical error.

regarding the applicability of Act 190's presumption.  Plaintiffs contend that Defendant has not established that Hanauma Bay complied with the conditions set forth in Act 190.  Defendant submitted another declaration by Mr. Goto with their reply. Mr. Goto stated that he is also a member of the task force established pursuant to Act 190 ("the Task Force") and had been since 1996.  [Reply, Supp. Decl. of Ralph S. Goto ("Supp. Goto Decl.") at ¶¶ 3-4.]  He stated that, as a member of the Task Force, he received documentation relating to Act 190 petitions and approvals, including documents concerning Hanauma Bay's signs.  [Id. at ¶¶ 5-8.]

Defendant also submitted: a form describing the three proposed locations of the Hanauma Bay current warning signs, including a map showing the proposed placements; and an October 13, 1997 memorandum to Michael Wilson, the Chairperson of BLNR ("the Chairperson"), from Ralston Nagata, the Chairperson's Designee for the Task Force.  [Exhs. H & I to Reply.]  The memorandum states:

> The Task Force has reviewed documentation prepared for your approval action.  The Task Force "Guidelines for Signage Placement" provided general guidance for locations selected.  The attached documentation on the City and County of Honolulu's parks include recommended revisions as described in the Task Force's May 29 and July 17, 1997 minutes.
>
> All submitted documentation sheets will be date stamped, as your sign placement approval, together with your previous sign design approval, are

> necessary steps in administering Act 190. . . .
>
> Thereafter, the signs will be installed at the
> approved placement locations.

[Exh. I to Reply.]  Below this text is the Chairperson's
October 16, 1997 signature to the statement: "I hereby approve
all sign placements for City and County of Honolulu's parks
submitted via this memorandum[.]"  [Id.]  The memorandum includes
a list of City and County of Honolulu Beach Parks, including
Hanauma Bay, and a map showing the locations of the beach parks.
Those two pages, as well as the two pages in Exhibit H, are date
stamped "Oct 16 1997", indicating the Chairperson's approval.

      In order to trigger Act 190's conclusive presumption, a
county must obtain approval of both the design and placement of
warning signs.  See Act 190, § 2(b) at 435.  The Chairperson's
October 16, 1997 approval, however, clearly applies only to "sign
placements".  Mr. Nagata's October 13, 1997 memorandum refers to
the Chairperson's prior approval of sign design, but Defendant
has not submitted any evidence of this approval.  Further, there
is no indication that the Chairperson considered "the needs of
the public to be warned of potentially dangerous conditions"
prior to approving Hanauma Bay's warning signs.  See Act 190,
§ 2(h) at 436.

      This Court finds that, at this time, there is a
material issue of genuine fact regarding whether the warning
signs at Hanauma Bay on the day of the incident met the

20

requirements of Act 190.  This Court therefore cannot apply Act 190's conclusive presumption of legally adequate warnings. Defendant's request for summary judgment as to all claims alleging that Hanauma Bay's warning signs are inadequate is DENIED.[3]

## III. **Lifeguards' Alleged Negligence**

Defendant argues that it is entitled to summary judgment as to the claims arising from the lifeguards' actions or omissions because, under Hawai`i law, a plaintiff must prove that the actions or omissions of county lifeguards were wanton or grossly negligent.  Defendant argues that Plaintiffs failed to plead gross negligence or wanton conduct.  Defendant cites the following language from the Complaint: "Defendant City acted in a careless and negligent manner in that its employees and agents negligently performed water safety and lifeguard duties and failed to keep a proper lookout for swimmers in distress, including Decedent Powell and Decedent Laughlin."  [Complaint at ¶ 15.]  Defendant argues that this merely alleges simple

---

[3] Plaintiffs argued that the Court should not consider Exhibit I because Defendant did not timely produce it to Plaintiffs in discovery.  Plaintiffs also argued that this Court should not consider Exhibit I because it is inadmissible hearsay. Insofar as this Court has found that Exhibits H and I alone are not enough to trigger Act 190's conclusive presumption, this Court declines to address these arguments at this time and expresses no opinion as to the merits of these objections.  If Plaintiffs wish to have Exhibit I excluded at trial, Plaintiffs should a motion for discovery sanctions or a motion in limine.

negligence, to which county lifeguards are immune.

Act 170 took effect on June 18, 2002 and will be repealed June 30, 2007.  <u>See</u> 2002 Haw. Sess. Laws, Act 170, § 5 at 610.  Act 170 added the following provisions to Haw. Rev. Stat. § 663-10.5:

> **§663- Exception to liability for county lifeguard services**.  (a) For the purpose of this section:
> "County lifeguard" means a person employed as a lifeguard by a county of this State.
> "Employing county" means the county employing a county lifeguard.
>
> (b) Notwithstanding any other law to the contrary, a county lifeguard, the employing county, and the State shall not be liable for any civil damages resulting from any act or omission of the lifeguard while providing rescue, resuscitative, or other lifeguard services on the beach or in the ocean in the scope of employment as a county lifeguard.  This exception from liability, however, shall not apply when the claim for civil damages results from a county lifeguard's gross negligence or wanton act or omission.

Act 170, § 2 at 609-10.

Plaintiffs do not dispute that, to the extent the Complaint alleges that Defendant's lifeguards were responsible for Powell and Laughlin's deaths, it must allege that the lifeguard's actions or omissions were grossly negligent or wanton.  Plaintiffs, however, argue that, under notice pleading, the Complaint contains sufficient allegations of gross negligence or wanton acts or omissions.  Plaintiffs point to the following portion of the Complaint:

22

19.  Plaintiffs reallege and incorporate by
reference all of the allegations contained in this
Complaint as though fully set forth and repeated
here.
20.  Defendant City acted in a <u>grossly negligent
and wanton manner</u> because, among other reasons, a
visitor center employee or agent of Defendant City
directed decedents to swim at the southern edge of
the bay without any warning or without adequate
warning, although <u>Defendant City and its employees
an [sic] agents knew or should have known the
southern edge of the bay was more dangerous</u>
compared to other parts of the bay, and was very
dangerous on July 19, 2002, considering the ocean
conditions that day, and was otherwise unstaffed
or understaffed by water safety officers and
lifeguards.
21.  As a direct and proximate result of the <u>gross
negligence and wanton acts of Defendant City,
through its employees and agents</u>, Decedent Powell
and Decedent Laughlin drowned . . . .

[Mem. in Opp. at 21 (quoting Complaint at ¶¶ 19–21) (emphases in

original).]

A complaint must include "a short and plain statement

of the claim showing that the pleader is entitled to relief[.]"

Fed. R. Civ. P. 8(a)(2).  The Supreme Court has stated that "the

Rule mean[s] what it sa[ys]."  <u>Leatherman v. Tarrant County

Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168

(1993).  The Supreme Court further held that, the liberal "notice

pleading" standard,

do[es] not require a claimant to set out in detail
the facts upon which he bases his claim.  To the
contrary, all the Rules require is 'a short and
plain statement of the claim' that will give the
defendant fair notice of what the plaintiff's
claim is and the grounds upon which it rests.

<u>Id.</u> (citations and quotation marks omitted).

In Count I of the Complaint, Plaintiffs do not allege gross negligence or wanton actions or omissions on the part of the lifeguards.  Count II of the Complaint, however, incorporates all of the prior allegations in the Complaint and Count II clearly alleges that Defendant and its agents and employees acted in a grossly negligent and wanton manner.  This Court therefore finds that the allegations in the Complaint are sufficient to raise a claim based on the lifeguards' gross negligence and/or wanton acts or omissions.  The Court also finds that Plaintiffs have presented enough evidence of the lifeguards' gross negligence or wanton conduct to survive summary judgment. Defendant's Motion is DENIED as to its argument that Plaintiffs failed to allege gross negligence or wanton conduct.

## IV.  **Claims Arising from Visitor Center Worker's Actions**

Count II of the Complaint alleges, *inter alia*, that a visitor center worker directed Powell and Laughlin's group to swim at the southern edge of the bay, despite the dangerous conditions of the day and without warning them about the dangerous conditions.  [Complaint at ¶ 20.]  Defendant submitted a declaration by Alan Hong, the manager of Hanauma Bay, stating that, at the time of the incident, the University of Hawai`i provided volunteers to staff the Hanauma Bay visitor center pursuant to contract.  Mr. Hong therefore asserts that the person referenced in paragraph 20 of the Complaint was a University of

24

Hawai`i volunteer and was not Defendant's agent or employee. [Def.'s Facts, Decl. of Alan Hong at ¶¶ 1, 5-9.] Plaintiffs argue that Defendant is not entitled to summary judgment on this claim because it did not produce any admissible evidence to establish that the visitor center employee was not Defendant's agent or employee. Defendant did not identify the person, nor did it produce a log showing the volunteers who worked at the visitor center on the day in question. Plaintiffs, however, do not present evidence contradicting Mr. Hong's declaration.

This Court finds that, as the manager of Hanauma Bay, Mr. Hong possesses the personal knowledge and expertise to testify regarding the personnel at the Hanauma Bay visitor center. Mr. Hong's declaration is sufficient to establish that the workers at the visitor center on the day in question were University of Hawai`i volunteers. Plaintiffs have not presented any evidence that the visitor center worker was in fact Defendant's employee, nor have they presented any evidence that the contract between the University of Hawai`i and Hanauma Bay was such that the worker should be considered Defendant's agent. The Court therefore finds that the visitor center worker described in paragraph 20 of the Complaint was not Defendant's agent or employee. Defendant's Motion is GRANTED as to Plaintiffs' claims arising from the actions or omissions of the visitor center worker.

25

V.    **Punitive Damages**

Plaintiffs' Complaint prays for, *inter alia*, "general, special and punitive damages in amounts that will be proven at trial[.]"  [Complaint at pg. 6.]  Defendant is a municipality. In <u>Lauer v. Young Men's Christian Ass'n of Honolulu</u>, the Hawai`i Supreme Court held that, for policy reasons, a municipality is not liable for punitive damages.  <u>See</u> 57 Haw. 390, 402, 557 P.2d 1334, 1342 (1976).  It held that the deterrent or retributive effect of punitive damages may only fall upon the individual wrongdoer, including "a person superior in authority who expressly authorizes, ratifies or condones the tortious act of the employee."  <u>See</u> <u>id.</u>  Insofar as Plaintiffs did not name any individuals as defendants, Plaintiffs cannot recover punitive damages.  Defendant's Motion is therefore GRANTED as to Plaintiffs' request for punitive damages.

**CONCLUSION**

On the basis of the foregoing, Defendant's Motion for Partial Summary Judgment, filed December 29, 2006, is HEREBY GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED, and summary judgment shall be entered in favor of Defendant, as to: 1) the claims in Count II of the Complaint arising from the actions and omissions of the visitor center worker; and 2) Plaintiffs' request for punitive damages.  The Motion is DENIED in all other respects.

26

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, February 26, 2007.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**ESTATE OF ERIK A. POWELL, ET AL. V. CITY AND COUNTY OF HONOLULU;
CIVIL NO. 04-00428 LEK; ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

27