CARRIE K.S. OKINAGA   5958-0
Corporation Counsel
DEREK T. MAYESHIRO   6858-0
Deputy Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Honolulu, Hawaii  96813
Telephone:  (808) 523-4890
Facsimile:  (808) 523-4583
E-mail:  dmayeshiro@honolulu.gov


ROBBINS & ASSOCIATES
Attorneys at Law
A Law Corporation

KENNETH S. ROBBINS   1000-0
JOHN ANDERSON I. MEYER  8541-0
2200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-2355
Facsimile:  (808) 526-0290
E-mail:  defend@robbinsandassociates.net


LYONS, BRANDT, COOK & HIRAMATSU
Attorneys at Law
A Law Corporation

THOMAS E. COOK  1752-0
STEFAN M. REINKE  3747-0
1800 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-7030
Facsimile:  (808) 533-3011
E-mail:  tcook@lbchlaw.com

Attorneys for Defendant
CITY AND COUNTY OF HONOLULU

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE ESTATE OF ERIC A. POWELL, THROUGH PERSONAL REPRESENTATIVE MARK K. POWELL; THE ESTATE OF JAMES D. LAUGHLIN, THROUGH PERSONAL REPRESENTATIVE RAGINAE C. LAUGHLIN; MARY K. POWELL, INDIVIDUALLY; RAGINAE C. LAUGHLIN, INDIVIDUALLY; CHLOE LAUGHLIN, A MINOR, THROUGH HER NEXT FRIEND, RAGINAE C. LAUGHLIN, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. CV04 00428 LEK

MEMORANDUM IN SUPPORT OF DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO EXCLUDE TO RICHARD GILL, PH.D. |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CITY AND COUNTY OF HONOLULU, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| CITY AND COUNTY OF HONOLULU, | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) ) | |
| vs. | ) ) | |
| UNIVERSITY OF HAWAII, a body corporation; JOHN DOES 1-10; | ) ) ) | |

JANE DOES 1-10; DOE        )
CORPORATIONS and DOE    )
ENTITIES,                   )
                                  )
            Third-Party    )
            Defendants.   )
_____ )

TABLE OF CONTENTS

Table of Authorities ................................................................. ii

I.     INTRODUCTION ............................................................1

II.    BACKGROUND ...............................................................3

       A.    Relevant Facts.........................................................3

       B.    The County Met Its Duty Of Care In Providing Lifeguard
             Services At Hapuna Beach .................................................6

III.   DISCUSSION.....................................................................9

       A.    Dr.  Gill Does Not Have Background Training Or
             Experience In The Area Of Water Safety ..........................11

       B.    Dr. Gill Did Not Perform Any Tests Or Studies To
             Support Or Verify His Opinions.......................................12

IV.    CONCLUSION ..............................................................16

TABLE OF AUTHORITIES

<u>CASES</u>

<u>Adams v. Indiana Bell Telephone Co., Inc.</u>,
    2 F. Supp. 2d 1077 (S.D. Ind. 1998).............................................................. 14

<u>Barrett v. Atl. Richfield Co.</u>,
    95 F.3d 375 (5th Cir. 1996) ......................................................................... 13

<u>Birmingham v. Fodor's Travel</u>
    <u>Publications, Inc.</u>,
    73 Haw. 359,
    833 P.2d 70 (1992)........................................................................................ 6

<u>Bouchard v. American Home Products, Corp.</u>,
    213 F. Supp. 2d 802 (N.D. Ohio 2002)....................................................... 14

<u>Carreira v. Territory of Hawaii</u>,
    40 Haw. 513 (1954) ...................................................................................... 7

<u>Clark v. Takata Corp.</u>,
    192 F.3d 750 (7th Cir. 1999) ...................................................................... 15

<u>Daubert v. Merrell Dow</u>
    <u>Pharmaceuticals, Inc.</u>,
    509 U.S. 579,
    113 S. Ct. 2786,
    125 L. Ed. 2d 469 (1993) ............................................... 9, 10, 11, 12, 15, 16

<u>Domingo v. T.K.</u>,
    289 F.3d 600 (9th Cir. 2002) ...................................................................... 15

<u>Flora v. Bimini Water Company</u>,
    161 Cal. 495,
    119 P. 661 (1911) ......................................................................................... 7

<u>Gen. Elec. Co. v. Joiner</u>,
    522 U.S. 136,

118 S. Ct. 512,
139 L. Ed. 2d 508 (1997) .......................................................................10, 15

Gill v. United States Fidelity
    and Casualty Company,
    257 So. 2d 437
    (La. App. 1972)............................................................................... 7

Haines v. Honolulu Shipyard, Inc.,
    125 F. Supp. 2d 1020 (D. Haw. 2000) ......................................... 16

Iddings v. Mee-Lee,
    82 Hawai'i 1,
    919 P.2d 263 (1996) ....................................................................... 8

In re:  "Diet Drugs"
    (Phentermine, Fenfluramine, Dexfenfluramine)
    Prod. Liab. Litig., No. MDL 1203,
    2001 WL 454586, at *5-6
    (E.D. Pa. Feb. 1, 2001) ............................................................... 14

Kaczmarczyk v. City & County of Honolulu,
    65 Haw. 612,
    656 P.2d 89 (1982) ...................................................................6, 7, 8

Kumho Tire Company, Ltd.
    v. Carmichael,
    526 U.S. 137,
    119 S. Ct. 1167 (1999) ............................................... 9, 10, 11, 14

Lindsey v. DeVaux,
    50 Cal. App. 2d 445,
    123 P.2d 144 (1942) ....................................................................... 7

Maull v. State,
    185 N.Y.S.2d 182 (1959) ............................................................... 8

McGowan v. Cooper Indus., Inc.,
    863 F.2d 1266 (6th Cir. 1988) ..................................................... 13

Mid-State Fertilizer v. Exchange National Bank,
    877 F.2d 1333 (7th Cir. 1989) .................................................................... 14

Mukhtar v. California State
    University, Hayward,
    299 F.3d 1053 (2002),
    amended, 319 F.3d 1073
    (9th Cir. 2003)...................................................................................... 10, 11

Redman v. John D. Brush & Co.,
    111 F.3d 1174 (4th Cir. 1997) ...................................................................... 13

Sec. & Exch. Comm'n v. Lipson,
    46 F. Supp. 2d 758 (N.D. Ill. 1998) ............................................................. 13

STX, Inc. v. Brine, Inc.,
    37 F. Supp. 2d 740 (D. Md. 1999),
    aff'd, No. 99-1540, 2000 WL 564010
    (Fed. Cir. May 8, 2000)................................................................................ 13

Trevino v. City of Rock Island Police Department,
    91 F. Supp. 2d 1204 (C.D. Ill. 2000) ......................................................14, 15

United States v. Hall,
    165 F.3d 1095 (7th Cir. 1999) ...................................................................... 15

United States v. Saya,
    961 F. Supp. 1395 (D. Haw. 1996) .........................................................11, 16


RULES

Federal Rule of Evidence 702 ...............................................................9, 10, 12, 16


TREATISES

4 Weinstein's Fed. Evid. § 702.06[1] (2000) .......................................................... 13


ACTS

2002 Haw. Sess. L. Act 170 ..................................................................................... 8

2002 Haw. Sess. L. Act 170, § Section 1(b) ........................................................... 8

2002 Haw. Sess. L. Act 190 ..................................................................................... 6

MEMORANDUM IN SUPPORT OF DEFENDANT CITY
AND COUNTY OF HONOLULU'S MOTION TO EXCLUDE
TO RICHARD GILL, PH.D.

I.        INTRODUCTION

Plaintiff has identified Richard Gill, Ph.D., as an expert witness in this

case.  It is anticipated that Dr. Gill, who testifies in the area of human factors, will

attempt to offer opinion testimony regarding lifeguard services at Hanauma Bay

and matters relating to the conduct of the water safety officers present on the day

of the incident.  Defendant City and County of Honolulu ("City") brings this

Motion to exclude Dr. Gill and prevent him from testifying at trial as to any

opinions in this area as they are not reliable, relevant or helpful to the fact finder.[1]

The City does not dispute that Dr. Gill holds himself out as an expert

in the area of human factors.  However, the City contests the reliability and

relevance of his testimony in this matter as they relate to lifeguard services.

Dr. Gill states in his deposition that he is performing a safety and risk management

analysis and that is the focus of his opinions.  In fact, Dr. Gill's report and

testimony deals largely with issues that are properly within the domain of a water

---

[1] As to this matter, the inquiry necessarily concerns the qualifications of Dr. Gill
and the reliability and relevance of his opinions.  A complete copy of Dr. Gill's
March 2, 2007 deposition transcript and exhibits to the transcript is attached as
Exhibit "A."  His reports are attached as Exhibits "1" and "2" to Exhibit "A."
Dr. Gill testified that all of his opinions in this case may be found in his deposition
and reports.  See Exhibit "A" at 156.

safety expert.  For example, Dr. Gill's report and deposition testimony includes

opinions on the following subjects:

1.      That there were hazardous conditions at Hanauma Bay.

2.      That lifeguards are responsible for scanning the entire area they are responsible for in 10 second and should respond to any sign of distress within 30 seconds.

3.      That there are an insufficient number of lifeguards.

4.      That the lifeguards consciously disregarded the safety and well-being of Powell and Laughlin by either failing to see them as they approached Witches Brew or failing to stop them from going into Witches Brew.

5.      That the City should:

      a.      provide more WSOs;

      b.      use jet skis at Hanauma Bay;

      c.      use buoys to mark "dangerous areas";

      d.      station WSOs in the water; and

      e.      use a megaphone/loudspeaker to communicate warnings.

6.      That Powell and Laughlin drowned as a result of the "hazardous condition" and that they did nothing to negligently contribute to their deaths.

7.      That the outer reef should have been "closed" on the day of the incident.

8.      That WSOs improperly evaluated swimmers' abilities to determine whether the swimmers warrant additional attention from the WSO.

9.      That the WSOs were using improper scanning
techniques.

Dr. Gill does not have any training or education as a water safety

officer or as a person charged with overseeing the operation of a beach facility.  He

also failed to conduct any independent research or investigation to substantiate any

of the opinions he is attempting to render in this matter.  Because of these

deficiencies, Dr. Gill should be prohibited from testifying at trial in areas relating

to the water safety operations at Hanauma Bay and the conduct of the WSOs.

II.            BACKGROUND

The following is a brief summary of the facts of the case and the

relevant legal standards.

A.      Relevant Facts

On July 19, 2002, Water Safety Officer Clarence Moses ("WSO

Moses") saw a swimmer coming around Witches Brew Point.  The swimmer was

doing fine until he attempted to climb onto the side of the bay and fell into the

water.  WSO Moses sent his partner, WSO Daniel Neves ("WSO Neves") to assist

the swimmer.  WSO Neves grabbed his equipment and took off.  By the time WSO

Neves reached the end of the beach, the swimmer, who was hanging onto the

ledge, fell back into the water.  Then, WSO Moses called the supervisor informing

him of a possible rescue.  Deposition of Clarence Moses taken on March 17, 2006

("Moses Depo"), attached to Defendant City & County of Honolulu's Motion for Partial Summary Judgment filed herein on December 29, 2006 ("C&C's MSJ") as Exhibit "B," at page 28, line 23 – page. 29, line 25.

WSO Neves ran to the ledge near to the swimmer and jumped into the water with his rescue tube. He reached the swimmer and started mouth-to-mouth resuscitation. Deposition of Daniel Neves taken on March 24, 2006 ("Neves Depo"), attached to C&C's MSJ as Exhibit "C," at page 54, line 22 – page 55, line 16.

WSO Moses ran with toward the ledge with his equipment, oxygen and first aid kit. C&C's MSJ, Exhibit "B," page 30, lines 1-4 – page 33, lines 7-8. The acting supervisor, Ron Bregman, drove past WSO Moses with his truck heading toward the swimmer. When WSO Moses reached the ledge, WSO Neves brought the swimmer to the ledge. Id. at page 33, line 22 – page 34, line 8. The swimmer was lifted out the water and the lifeguards performed CPR. Id. at page 34, lines 15-17.

As they performed CPR, the swimmer began to vomit. C&C's MSJ, Exhibit "C," page 58, lines 1-8. The lifeguards had difficulty providing resuscitation because of the amount of vomit from the swimmer. Id. at page 58, line 25 – page 59, line 14. But, they continued their efforts until the ambulance arrived. C&C's MSJ, Exhibit "B," page 37, lines 17-23.

After the ambulance left, the lifeguards tried to determine who the swimmer was.  When they described the swimmer to the bay patrons, it was determined that he may not have been alone.  C&C's MSJ, Exhibit "B," page 38, line 18 – page 39, line 12.  Thereafter, the lifeguards called for the mobile rescue team who operate the jet ski.  Id. at page 39, lines 13-21.

WSO Billy Goodwin was operating the jet ski that day, Deposition of William Goodwin taken on March 6, 2006 ("Goodwin Depo"), attached to C&C's MSJ as Exhibit "D," page 11, lines 22-24, and his partner was WSO Rob Dorr.  Id. at page 22, lines 5-10.  They were at Sandy Beach when they received the call of a missing swimmer at Hanauma Bay.  They drove to Hanauma Bay and as they came down WSO Moses was going up to get a better visual of the bay.  When WSO Moses spotted the missing swimmer, WSOs Goodwin and Dorr launched the jet ski and picked up the missing swimmer and performed CPR.  Id. at page 22, line 11 – page 23, line 5.

The first swimmer was later identified as Decedent James Laughlin and the second swimmer was later identified as Decedent Mark Powell.

B.    The County Met Its Duty Of Care In Providing Lifeguard
      Services At Hapuna Beach

For years, Hawaii case law established the respective duties of the

owners of the beach and the adjacent lands,[2] Birmingham v. Fodor's Travel

Publications, Inc., 73 Haw. 359, 382, 833 P.2d 70 (1992), and the WSOs at the

beach, Kaczmarczyk v. City & County of Honolulu, 65 Haw. 612, 656 P.2d 89

(1982).

In Kaczmarczyk, the court found that, when a municipality provides

lifeguard service to a beach park, even if it is under no duty to do so, it has a duty

to perform those services with reasonable care.  65 Haw. at 617.  The court defined

reasonable care with respect to lifeguard services as follows:

> Reasonable care in this context necessarily contemplates
> that the lifeguards assigned are competent and qualified
> to perform these services.  In this connection, it has been
> said that in addition to his skills as a swimmer, "it may
> reasonably be assumed that a qualified lifeguard is one
> who has at least ordinary powers of observation, who is
> vigilant and attentive to duty, and who realizes that . . . he
> should be watchful for any sign of distress or danger and
> quick to render assistance."  [Citation omitted]  And in
> the "Lifeguard Manual" which it prepared in June, 1965,
> for the instruction and guidance of the City's lifeguards,
> the City's Department of Parks and Recreation outlined
> the first attributes of a good lifeguard to be "physical
> fitness, constant vigilance, sound judgment that dictates

---

[2] The common law duty to warn owed by the owner of the land was addressed by
the State Legislature in 1996.  That legislation, Act 190, and its impact on this case
was briefed for the Court in the C&C's MSJ.

> for immediate action, and adherence to the rules and
> regulations."

65 Haw. at 617, quoting, Lindsey v. DeVaux, 50 Cal. App. 2d 445, 453, 123 P.2d
144, 149 (1942).

The court finally stated the basic standard as follows:  "a lifeguard is
required in the performance of his duties to exercise that degree of care which an
ordinarily prudent lifeguard, possessing the requisite training and skills, would
exercise under the same or similar circumstances."  65 Haw. at 618.

Using this standard, the court found that the record clearly showed
that the two men on duty on the day of the accident were qualified and competent
lifeguards who had been properly trained and instructed.  They were alert and
vigilant and were in a position to observe the swimming and bathing activity in the
waters.  Thus, the court stated there could be no finding of negligence on the part
of the City and County of Honolulu ("City and County") lifeguards stationed at the
park on the day of the accident.[3]

---

[3] There is no implication that negligence occurred because there was an accident.
The well-established rule with respect to drowning was set forth by the California
Supreme Court in Flora v. Bimini Water Company, 161 Cal. 495, 119 P. 661
(1911), when it stated "The mere fact that a drowning occurred, regrettable though
it be, is not, of course, conclusive proof of negligence.  See also, Carreira v.
Territory of Hawaii, 40 Haw. 513 (1954) (death of a swimmer at a pool does not
cast upon the proprietor the burden of excusing himself from any presumption of
negligence).  Gill v. United States Fidelity and Casualty Company, 257 So. 2d 437
(La. App. 1972) (no presumption of fault arises from the mere fact of a drowning
and plaintiff must show some dereliction of duty on the part of owner of the pool

Subsequent to <u>Kaczmarczyk</u>, the Legislature statutorily afforded county lifeguards immunity from simple negligence.  Under the current law, plaintiffs must plead and prove that county lifeguards were grossly negligent or acted wantonly.  Act 170 of the 2002 Regular Session states in relevant part:

> (b)    Notwithstanding any other law to the contrary, a county lifeguard, the employing county, and the State shall not be liable for any civil damages resulting from any act or omission of the lifeguard while providing rescue, resuscitative, or other lifeguard services on the beach or in the ocean in the scope of their employment as a county lifeguard.  This exception from liability, however, shall not apply when the claim for civil damages results from a county lifeguard's gross negligence or wanton act or omission.

2002 Haw. Sess. L. Act 170, § Section 1(b).

> Gross negligence is defined as follows:
>
> Indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected.  It is a heedless and palpable violation of legal duty respecting the rights of others.  The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence.  Gross negligence is a manifestly smaller amounts of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.  But it is something less than the willful, wanton and reckless conduct.

<u>Iddings v. Mee-Lee</u>, 82 Hawai'i 1, 23, 919 P.2d 263, 285 (1996).

---

or his employees).  <u>Maull v. State</u>, 185 N.Y.S.2d 182 (1959) (State is not insurer of those who make use of its park facilities).

III.        <u>DISCUSSION</u>

In order for Dr. Gill to testify at trial, Plaintiff must satisfy Rule 702

of the Federal Rules of Evidence ("FRE"), which provides:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand the
> evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based
> upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably to
> the facts of the case.

The Supreme Court, in <u>Kumho Tire Company, Ltd. v. Carmichael</u>,

526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999), recognized that expert testimony

must be both relevant and reliable, citing its earlier decision in <u>Daubert v. Merrell</u>

<u>Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469

(1993):

> In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
> 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993),
> this Court focused upon the admissibility of scientific
> expert testimony. It pointed out that such testimony is
> admissible only if it is both relevant and reliable. And it
> held that the Federal Rules of Evidence "assign to the
> trial judge the task of ensuring that an expert's testimony
> both rests on a reliable foundation and is relevant to the
> task at hand." *Id.,* at 597, 113 S.Ct. 2786. The Court also
> discussed certain more specific factors, such as testing,
> peer review, error rates, and "acceptability" in the
> relevant scientific community, some or all of which
> might prove helpful in determining the reliability of a

particular scientific "theory or technique."  *Id.,* at 593-594, 113 S.Ct. 2786.

<u>Daubert</u> concerned a case involving expert scientific testimony.  However, <u>Kumho</u> clarified that the district court's gatekeeping obligation of ensuring that expert testimony is both reliable and relevant extends to all types of expert testimony. 526 U.S. at 147, 119 S. Ct. at 1174.

A concise statement of the <u>Daubert</u> analysis can be found in the Ninth Circuit decision in <u>Mukhtar v. California State University, Hayward,</u> 299 F.3d 1053 (2002), amended, 319 F.3d 1073 (9th Cir. 2003).  There, the Ninth Circuit expressed the importance of the gatekeeping standards since expert testimony tends to be given greater weight by juries:

> Federal Rule of Evidence 702 allows admission of "scientific, technical or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  The trial court must act as a "gatekeeper" to exclude "junk science" that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.  *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147-48, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Daubert,* 509 U.S. at 589-90, 592-93, 113 S.Ct. 2786.  As the Supreme Court emphasized, however, "[t]he inquiry envisioned by Rule 702 is ... a flexible one," *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786, and must be "tied to the facts of a

particular case." *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167 (quotation marks omitted).

The trial court's "special obligation" to determine the relevance and reliability of an expert's testimony, *Kumho Tire,* 526 U.S. at 147, 119 S.Ct. 1167, is vital to ensure accurate and unbiased decision-making by the trier of fact. *Kumho Tire* described the "importance of *Daubert's* gatekeeping requirement ... to make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152, 119 S.Ct. 1167. Or, more specifically, the trial judge must ensure that "junk science" plays no part in the decision. <u>Maintaining *Daubert's* standards is particularly important considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony.</u>

299 F.3d at 1063-64 (emphasis added).

Plaintiff is obligated to show by a preponderance of the evidence that Dr. Gill's testimony is admissible. <u>See</u> <u>Daubert</u>, 509 U.S. at 592 n.10, 113 S. Ct. 2796 n.10; <u>United States v. Saya</u>, 961 F. Supp. 1395, 1396 (D. Haw. 1996). The district court has wide latitude in determining the reliability of an expert's opinion and how to make that determination. <u>Mukhtar</u>, 299 F.3d at 1064.

A.    Dr. Gill Does Not Have Background Training Or Experience In The Area Of Water Safety

It is clear that Dr. Gill lacks the qualifications to provide expert testimony regarding water safety. Dr. Gill has never trained as a water safety officer (see Exhibit "A" at page 25). He has never had any formalized training regarding water safety (see Exhibit "A" at page 25). He has never taught courses

17004 MOTION 01 PSR                                11

in water safety (see Exhibit "A" at page 29). He has never published any articles (see Exhibit "A" at pages 29-30) or presented any seminars on water safety (see Exhibit "A" at page 27). He is not a member of any water safety organization or association (such as the United States Life Guarding Association or Red Cross, see Exhibit "A" at pages 49 and 58). Even in his role as an expert witness, he has limited experience with providing opinions in lifeguard cases see generally (see Exhibit "A" at pages 6-21. Indeed, the only other case that Dr. Gill could recall involving lifeguard services and beach lifeguards was a Hanauma Bay case that occurred subsequent to the accident in this case (see Exhibit "A" at page 15). Dr. Gill has never been retained to design a water safety program for a facility (see Exhibit "A" at page 36). He has never drafted any manual, specification or guideline for training lifeguards (see Exhibit "A" at page 44. Plainly, Dr. Gill lacks the qualifications to provide any assistance to the jury regarding water safety issues involving the acts or omissions of the lifeguards and the City and County. Dr. Gill also has no training or education in the general area of ocean conditions (waves, currents, undertow and the like) (see Exhibit "A" at page 28).

      B.    Dr. Gill Did Not Perform Any Tests Or Studies To Support Or Verify His Opinions

     As indicated in Rule 702, FRE, and <u>Daubert</u> and its progeny, an expert's opinion needs to be case-specific and based upon the facts of the case.

Dr. Gill's opinion regarding the visibility and swim times have not been substantiated.  He conducted no tests, failed to observe the WSOs in action for any extended period, failed to measure any distances, did not perform any tests to determine visibility of the critical portions of the bay from the locations of the lifeguards, and, most importantly, failed to place himself in a position at or near to the location of Witches Brew to make any assessment of the visual impact that the wave action and currents in that area may have had on a snorkeler.

Dr. Gill's testimony must be limited to the area of his expertise, and cannot include personal beliefs:

> In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise."  4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000).  In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue.  *Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir.1997); *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382b (5th Cir.1996).

> Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury.  *McGowan v. Cooper Indus., Inc.,* 863 F.2d 1266, 1273 (6th Cir.1988); *STX, Inc. v. Brine, Inc.*, 37 F.Supp.2d 740, 768 (D.Md.1999) (quotation omitted), *aff'd,* No. 99-1540, 2000 WL 564010 (Fed.Cir. May 8, 2000); *Sec. & Exch. Comm'n v. Lipson,* 46 F.Supp.2d 758, 763 (N.D.Ill.1998).

<u>Bouchard v. American Home Products, Corp</u>., 213 F. Supp. 2d 802, 809

(N.D. Ohio 2002), quoting <u>In re: "Diet Drugs" (Phentermine, Fenfluramine,</u>

<u>Dexfenfluramine) Prod. Liab. Litig.</u>, No. MDL 1203, 2001 WL 454586, at *5-6

(E.D. Pa. Feb. 1, 2001).

      In <u>Trevino v. City of Rock Island Police Department</u>, 91 F. Supp. 2d

1204, 1207-08 (C.D. Ill. 2000), the court precluded testimony of an expert police

officer since it was based on his personal experiences and did not include verifiable

methodology:

> In rendering these opinions, Doane has no verifiable methodology and has given the Court no indication that he has applied "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 119 S.Ct. at 1176. Essentially, his proposed testimony boils down to the conclusion that because he has been able to perform police work successfully despite his monocular vision, then the Plaintiff will likewise be successful. This is a leap of faith that the Court is unwilling to make, as there is nothing inherent about Doane's own personal experience as a monocular visioned person which logically or scientifically leads to a supportable conclusion that other persons with monocular vision necessarily, or even probably, would have the same abilities that he has.
>
> "Judges must look behind an expert's ultimate conclusion and analyze the adequacy of its foundation." *Adams v. Indiana Bell Telephone Co., Inc.,* 2 F.Supp.2d 1077, 1093 (S.D.Ind.1998), citing *Mid-State Fertilizer v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir.1989). Despite his fervent conclusions, Doane pays little heed to the fact that he and the Plaintiff (or any

other monocular individual) do not necessarily have the same skills, abilities or residual capacities and would each be affected differently by the same external factors. He has not formulated his opinions after years of observing individuals with monocular vision in police work or by comparing test results for a sample of monocular visioned recruits with the scores obtained by recruits with sight in both eyes or by any of the other methods that have been implemented by vocational professionals in this type of case.

   "An expert must 'substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.' " *Clark v. Takata Corp.,* 192 F.3d 750, 757 (7th Cir.1999); *see also, United States v. Hall,* 165 F.3d 1095, 1101 (7th Cir.1999) (affirming a court's duty to "rule out subjective belief or unsupported speculation.") Here, Doane's ultimate opinions about Plaintiff's qualifications to perform police work amount to nothing more than subjective belief and unsupported conjecture that fail to rise to the level of reliability required under the standard established by *Daubert* and its progeny. Doane concedes that he is not a vocational expert and does not purport to be aware of any scientific or social studies that would confirm his extension of the subjective perceptions that he has developed through his own experiences/encounters in life into the concrete opinion that these conceptual possibilities or suppositions will actually be fulfilled in Plaintiff's case.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."  *Clark,* 192 F.3d at 758, *citing Joiner,* 118 S.Ct. at 519.

   Other cases coming out of the District of Hawaii have also recognized

the need for verifiable methodology and have rejected expert opinions based on the

ipse dixit of the expert.  See Domingo v. T.K., 289 F.3d 600, 607 (9th Cir. 2002)

(the expert's opinion regarding causation did not follow from his analysis);

Haines v. Honolulu Shipyard, Inc., 125 F. Supp. 2d 1020, 1033 (D. Haw. 2000) (the

court struck an industrial hygiene expert as it was not apparent how that qualified

the expert to testify as to the causation of plaintiff's blackout or to give a diagnosis

of his condition); and U.S. v. Saya, 961 F. Supp. at 1397 (where the purported basis

for an opinion's reliability is the expert's own testimony, it is properly rejected;

"bald assurances of validity" do not satisfy Daubert).

This case presents the situation where Dr. Gill has been asked to

render opinions in areas beyond the area of his expertise and has submitted

opinions which lack the methodology and factual basis needed to insure the

reliability of those opinions.  As such, his opinions invade the province of the jury,

which is charged with considering the evidence and determining the facts and the

credibility of witnesses.  Thus, his opinions fail to meet the Rule 702, FRE,

requirement that expert opinions assist the fact finder.

IV.      CONCLUSION

For the foregoing reasons, Defendant submits that this Motion be

granted, and that Richard Gill, Ph.D., be prevented from testifying at trial in areas

involving the actions of the WSOs and the overall water safety program at

Hanauma Bay.

DATED:  Honolulu, Hawaii, March 7, 2007.

/s/ Stefan M. Reinke
THOMAS E. COOK
STEFAN M. REINKE
Co-Counsel for Defendant
CITY AND COUNTY OF
HONOLULU